Case: 1:18-mc-00112
Assigned To : Howell, Beryl A.
Assign. Date : 8/14/2018
Description: Misc.

BROWN GOLDSTEIN LEVY

Andrew D. Freeman
adf@browngold.com

August 14, 2018

*Via Hand Delivery*

The Honorable Chief Judge Beryl A. Howell
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington D.C. 20001

    Re:    Emergency Request to Unseal Special Master's Report Concerning Allegations of Improper Disclosures of Grand Jury Materials by Independent Counsel Prosecutors in Connection with 1998 Investigation of President Clinton

Dear Chief Judge Howell:

    We are counsel for American Oversight, a nonpartisan organization committed to promoting transparency in government, ensuring the accountability of government officials, and educating the public about government activities through various means, including the publication of government materials.

    On American Oversight's behalf, we write with an emergency request to unseal a report to then-Chief Judge Norma Holloway Johnson, authored by Special Master John W. Kern III in 1999, concerning allegations that prosecutors within the Office of Independent Counsel leaked confidential information to the press in connection with their 1998 investigation of then-President Clinton ("Special Master's Report" or "Report"). Independent Counsel Kenneth Starr and his team of attorneys conducted the OIC investigation. One of the OIC prosecutors who was a subject of the Special Master's investigation and report is the Honorable Brett M. Kavanaugh, whose nomination to the position of Associate Justice of the Supreme Court of the United States is pending, with confirmation hearings set to begin on September 4, 2018. Judge Kavanaugh's potential involvement in the OIC misconduct is a matter of great public importance and current national debate. Continued secrecy of this Report, authored and submitted to this Court nearly two decades ago, is unnecessary and harmful to the public interest. Given that the Supreme Court confirmation hearings for Judge Kavanaugh will begin in under three weeks, we seek resolution of this request as expeditiously as possible, as outlined below.

    **I.**    **Proposed Procedure for Handling Emergency Request for Unsealing of Special Master's Report**

    American Oversight requests the unsealing of the Special Master's Report, which was associated with (but not included on) the three dockets previously ordered unsealed by the Court in *In re Application to Unseal Dockets Related to Independent Counsel's 1998 Investigation of President Clinton* ("*In re Application to Unseal Dockets*"), 308 F. Supp. 3d 314 (D.D.C. 2018),

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 2

---

*stayed pending appeal*, D.C. Cir. Case No. 18-5142. Following the procedure of that proceeding, we submit this letter as a request for the unsealing of grand jury material, as provided in Local Criminal Rule 6.1, or in the alternative, as a request for the unsealing of a judicial record.[1] We ask that the Court, as was done in that case, generate a miscellaneous case number, list American Oversight and the Department of Justice as interested parties, and order that the matter be unsealed given the lack of any need to keep the proceedings secret. We further request that the Court set an expedited schedule that would facilitate resolution of this request within a week, to allow time for a possible expedited appeal prior to the start of the confirmation hearings. In the alternative, we can file a Complaint as a miscellaneous case, together, with a motion for a temporary restraining order in light of the urgency of the request.

Yesterday, in an effort to expedite resolution of this matter, we contacted Elizabeth J. Shapiro, the Deputy Director of the DOJ Federal Programs Branch, who represented the Government's interests in *In re Application to Unseal Dockets*. Ms. Shapiro suggested that the first step should be to locate a copy of the Special Master's Report. To that end, we respectfully request that a copy of the Report provided to former Chief Judge Johnson (if it can be located in the Court's files, Judge Johnson's files, or elsewhere) be provided to the Court and the DOJ for review pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i). We also understand that, "[u]pon termination of the Office of Independent Counsel, the active independent counsel was obligated to transfer all records which had been created during its tenure to the Archivist of the United States." *Judicial Watch, Inc. v. Nat'l Archives and Records Admin.*, 214 F. Supp. 3d 43, 52 (D.D.C. 2016) (citing 28 U.S.C. § 594(k)(1)). As a result of that transfer of records, the copy of the Report provided to the OIC's counsel, Donald Bucklin, may currently reside at the National Archives. If the Report cannot be promptly located in either the Court's files or the Archives, we respectfully suggest outreach to Mr. Bucklin and to Judge Kern's former assistant (recipients of two of the four paper copies of the Report, as described below). To the extent an evidentiary hearing is necessary or appropriate to locate a copy of the Report, we request that the Court commence one promptly to increase the likelihood that this matter can be resolved prior to the end of Judge Kavanaugh's confirmation process.

  **II.**  **Factual Background**

In 1998, former President Clinton, Sidney Blumenthal (former Assistant to the President), and Bruce Lindsey (former Deputy White Counsel) each moved for a show-cause order to the OIC, alleging that its prosecutors and/or staff had leaked grand jury material in violation of Federal Rule of Criminal Procedure 6(e), which protects the secrecy of "a matter occurring before the grand jury." The three motions were docketed separately as miscellaneous cases—

---

[1] We do not believe that this request for unsealing the Special Master's Report should be filed under seal, as similar requests to this Court have not been sealed. *See, e.g.*, *In re Application to Unseal Dockets*, Misc. No. 18-00019 (BAH) (D.D.C.), Dkt. No. 1; *In re Petition of Kutler*, Misc. No. 10-00547 (RCL) (D.D.C.), Dkt. No. 1.

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 3

---

Misc. No. 98-55, Misc. No. 98-177, and Misc. No. 98-228—and assigned to then-Chief Judge Johnson. These cases were consolidated, and on June 19, 1998, Chief Judge Johnson issued an order to the OIC and its individual members to show cause why they should not be held in contempt for violations of Rule 6(e). *See* Chief Judge Johnson's Order (June 19, 1998), attached as Exhibit 1. The Court found that the following six media reports constituted *prima facie* violations of Rule 6(e) or of the Court's own orders prohibiting disclosure of grand jury information:

1. Thomas Galvin, "Monica Keeping Mum – For Now Fends Off Query on Internal Affairs," *New York Daily News*, January 23, 1998;
2. Don Van Natta, Jr. & John M. Broder, "Lewinsky Would Take Lie Test in Exchange for Immunity Deal," *New York Times*, February 2, 1998;
3. Claire Shipman, "Ken Starr Rejects Lewinsky's Immunity Deal," *NBC Nightly News*, February 4, 1998;
4. *Fox News Broadcast*, May 6, 1998;
5. Scott Pelly, "Exclusive Information About Kenneth Starr's Next Moves," *CBS Evening News*, May 8, 1998; and
6. Steven Brill, "Pressgate," *Brill's Content*, August 1998.

The June 19, 1998, Order and a subsequent order outlined procedures for the show-cause proceedings.

The OIC appealed these orders. In its decision, the D.C. Circuit noted that the OIC "does not contest the district court's finding that the movants have satisfied their burden to establish a *prima facie* case of [Rule 6(e) violations]" by submitting various news articles that contained leaked information. *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1068 (D.C. Cir. 1998). On remand, Chief Judge Johnson issued another Order to Show Cause to the OIC members. *See* Chief Judge Johnson's Order (Sept. 25, 1998), attached as Exhibit 2. The court found an additional 18 *prima facie* violations of Rule 6(e) by OIC based on publicly available news reports that contained leaked grand jury material. Heeding advice from the D.C. Circuit, it further directed that Special Master Kern prepare a "report of his findings and conclusions" regarding his investigation of the leaks. *Id.* at 20. The court ordered that the report be submitted *in camera* to the court, with a copy to the OIC.

On January 29, 1999, the Special Master finalized the Report. As explained in Chief Judge Johnson's subsequent order, the Special Master prepared "exactly four copies of his report"—"one held by the Special Master; another retained by the Special Master's assistant; a third hand-delivered by the Special Master's assistant to the Court; and a fourth hand-delivered by the Special Master directly to the OIC's attorney, Donald Bucklin." *See* Chief Judge Johnson's Order (Feb. 12, 1999), attached as Exhibit 3. To ensure secrecy of the Report, "no copy of the Special Master's report was filed with the Clerk of Court nor served on the movants." *Id.* at 1. The existence of the Special Master's investigation was made public in the

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 4

---

media. *See* Susan Schmidt & Dan Morgan, *Starr: Witnessing for the Prosecution*, WASH. POST (Nov. 19, 1998), attached as Exhibit 4.

Remarkably, the substance of the sealed Special Master's Report was also leaked to the press. In an article entitled "The Survivor," published three weeks after the issuance of the Special Master's Report, Howard Fineman wrote that "[Independent Counsel Kenneth Starr] may have dodged another bullet, however: NEWSWEEK has learned that a 'special master' investigating leaks from Starr's team has delivered a report to Judge Norma Holloway Johnson in which he details inappropriate disclosures to the press, but no criminal leaks of grand-jury material. Johnson must still decide whether to accept the conclusions."[2] Howard Fineman, *The Survivor*, NEWSWEEK (Feb. 21, 1999), attached as Exhibit 5. While this summary of the conclusions of the Special Master's Report was reported by the press, the Report itself has remained under seal since its completion in January 1999.

As you know, earlier this year, CNN and one of its journalists requested, via a letter to your Honor, the unsealing of eight dockets related to the Independent Counsel's 1998 investigation of former President Clinton. Former President Clinton intervened and, in a status update to the Court, requested the unsealing of three additional sealed dockets closely related to the eight identified by CNN—those concerning the contempt litigation initiated by President Clinton and his staff against the OIC that resulted in the Report that is subject of the current request. *See* DOJ Response to CNN's Petition to Unseal, attached as Exhibit 6. The Department of Justice, an interested party to the proceeding, did not oppose former President Clinton's request to unseal those three additional dockets. Status Report of Former President Clinton, attached as Exhibit 7. It explained that, "to the extent Rule 6(e) materials were discussed in connection with alleged leaks, the underlying information and testimony was included in the [OIC Report to Congress.] Accordingly, Rule 6(e) no longer applies to these materials, and the Department has no objection to the requested unsealing." *Id.* at 8.

On April 16, 2018, this Court issued a decision unsealing in substantial part the 11 miscellaneous dockets associated with the OIC's 1998 investigation. *See In re Application to Unseal Dockets* (D.D.C. 2018). The Court relied on its inherent authority to disclose grand jury materials outside of Rule 6(e), analyzing the non-exhaustive list of factors outlined in *In re Craig*, 131 F.3d 99 (2d Cir. 1997), and used by judges of this Court. In unsealing the three related dockets concerning the contempt litigation, the Court explained that maintaining secrecy

---

[2] More recently, in a 2011 book about the OIC investigation, author Ken Gormley wrote, "Confidential sources would later confirm that the Kern Report 'did not paint a rosy picture' of OIC's dealings with the media ... Although Judge Kern stopped short of concluding that the Starr prosecutors had violated the law or illegally disclosed grand jury information, a reliable source confirmed that the special master believed OIC had acted overaggressively—and perhaps irresponsibly—in responding to perceived attacks by the White House." Ken Gormley, THE DEATH OF AMERICAN VIRTUE: CLINTON VS. STARR 659 (2011).

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 5

---

was unwarranted given that the grand jury investigation ended almost twenty years ago and the contempt litigation did not involve core grand jury material but rather improper leaks of that material. *In re Application to Unseal Dockets*, 308 F. Supp. 3d at 329.

### III.     The Special Master's Report Should be Unsealed

The Special Master's Report should be unsealed for at least three reasons. First, the Court should unseal the Report under its "inherent authority" to unseal records related to grand jury proceedings, as well as its inherent authority over records related to its own proceedings. Second, the Court should provide access to the Report under the common law right of access to judicial records. Third, the Court should unseal the Report under the First Amendment right of access to judicial proceedings, including contempt proceedings.

#### A. "Inherent Authority" to Unseal Records

As outlined in *In re Application to Unseal Dockets*, the Court possesses an "inherent authority to unseal and disclose grand jury material not otherwise falling within the enumerated exceptions to Rule 6(e)." 308 F. Supp. 3d at 323. Whether the Special Master's Report qualifies as grand jury material or as a judicial record,[3] the Court should use its inherent authority to unseal it.

When considering whether to order the disclosure of grand jury materials outside of Rule 6(e), judges of this Court consider the following *Craig* factors:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took

---

[3] There is some question as to whether the Special Master's Report is grand jury material, subject to the confidentiality provision in Rule 6(e). On the one hand, the D.C. Circuit has interpreted the scope of grand jury secrecy rather broadly; it "encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberation or questions of the jurors, and the like." *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981) (citation omitted). As a report in a collateral proceeding designed to investigate leaks of confidential information, it arguably falls under the protection of Rule 6(e). On the other hand, the underlying information contained in the Report—the leaks to the press—have long since been made public, so Rule 6(e) may no longer apply to these materials. Furthermore, the Report was commissioned for the sole purpose of assisting Chief Judge Johnson in deciding whether to hold the OIC members in contempt and thus may be more fairly characterized as a judicial record. *See infra* n.5.

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 6

---

> place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Application to Unseal Dockets*, 308 F. Supp. 3d at 326 (quoting *In re Petition of Kutler*, 800 F. Supp. 2d 42, 47–48 (D.D.C. 2011). Furthermore, the D.C. Circuit has stated that its "case law . . . reflects the common-sense proposition that secrecy is no longer 'necessary' when the contents of the grand jury matters have become public." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006); *see id.* (citing *In re North*, 16 F.3d 1234 (D.C. Cir. 1994)). In explaining this proposition, the D.C. Circuit highlighted its earlier decision holding that the OIC counsel did not violate 6(e) in leaking materials grand jury material because that information was "already common knowledge." *Id.* (quoting *In re Sealed Case*, 192 F.3d 995, 1001–05 (D.C. Cir. 1999)).

As *In re Application to Unseal Dockets*, here the *Craig* factors strongly favor unsealing the Special Master's Report. Most critical is the significant passage of time and the fact that the underlying information has already been disclosed to the public. In unsealing the related dockets, the Court noted that the grand jury investigation "concluded nearly two decades ago" and the "subject matter of this litigation did not involve consideration of secret grand jury materials but rather the improper disclosure of such information on the public record." *In re Application to Unseal Dockets*, 308 F. Supp. 3d at 329. Those same facts pertain here. Notably, the DOJ did not oppose unsealing those related documents because, as it explained, "to the extent Rule 6(e) materials were discussed in connection with alleged leaks, the underlying information and testimony was included in the [OIC Report to Congress.]" The same leaks, which by definition are public, were the subject of the Special Master's Report at issue. Further, as noted, a summary of the Special Master's Report has already been disclosed in the press and other publications such as *The Death of American Virtue*. Given that the "contents of the grand jury have become public," the Special Master's Report should be unsealed. *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d at 1140.

The other applicable factors further support disclosure. It is highly unlikely that the defendant in the grand jury proceeding would oppose disclosure, as it was former President Clinton who requested that the three related dockets be unsealed earlier this year. The identity of the party seeking disclosure supports unsealing. Seeking disclosure of the Special Master's Report falls squarely within American Oversight's mission of promoting transparency in government and accountability of government officials, as it very likely contains information relevant to Judge Kavanaugh's fitness for the highest judicial position in the country. Likewise, the specific information being sought weighs against secrecy—even more so than with the related dockets. It is undoubtedly in the public interest that the Special Master's Report be made

Brown Goldstein & Levy, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 7

---

available and considered prior to and as part of Supreme Court confirmation hearings.[4] In the words of the D.C. Circuit, "stale information is of little value . . . ." *Payne v. Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1998). In addition to the pressing need, there is also a historical interest in learning more about the OIC investigation of President Clinton, which standing alone justifies the request. *Craig*, 131 F.3d at 105 (nothing "prohibits historical interest, on its own, from justifying release of grand jury material"). Lastly, there is no additional reason for maintaining secrecy of the Report in this particular case.

In short, the need for secrecy of the Report is minimal, if not non-existent, given the significant passage of time and the fact that the underlying leaks and testimony have long been part of the public domain. Indeed, this Court found these factors persuasive when unsealing the substantively related dockets earlier this year. Accordingly, the Court should use its inherent authority to disclose the Special Master's Report.

### B. Common Law Right of Access

If the Special Master's Report does not qualify as grand jury material, it should nonetheless be unsealed pursuant to the common law right of access. The United States has a "common law tradition of public access to records of a judicial proceeding." *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980).[5] This right "is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch."

---

[4] In the context of motions for temporary restraining orders in situations similar to the present one, courts in this district have held that the non-disclosure of information constitutes an irreparable injury. *See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) ("EPIC will also be precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program."); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if plaintiff's FOIA request does not receive expedited treatment."). The fast-approaching date of the Senate confirmation hearings for Judge Kavanaugh thus supports the emergency nature of this request.

[5] "[W]hether something is a judicial record depends on the role it plays in the adjudicatory process." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017) (internal quotation marks and citations omitted). Here, the Special Master's Report played a central role in the court's decision-making process regarding the contempt proceedings. The court relied on the Report in making its decision regarding the OIC and its members. Accordingly, the Report can be considered a judicial record subject to the common law and First Amendment rights of access discussed herein. *See id.* at 666-69 (finding briefs and joint appendix to be "judicial records" because they affect the court's decision-making process).

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 8

---

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). "[T]here is a 'strong presumption in favor of public access to judicial proceedings'" that can only be overcome by competing interests in certain circumstances. *Id.* at 665 (quoting *Hubbard*, 650 F.2d at 317). In *Hubbard*, the D.C. Circuit established a six-factor test to evaluate a motion to unseal:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650 F.2d at 317-22); *see also Metlife*, 865 F.3d at 665. Here, each of those factors weighs in favor of unsealing the Special Master's Report.

First, as noted above, in order to assess Judge Kavanaugh's fitness for the highest judicial position in the country, the public has a need for all relevant information regarding Judge Kavanaugh, his professional experience, and allegations of professional misconduct. Second, while the public has not had formal access to the Special Master's Report, the substance of the Report was leaked to the press. Exhibit 5. The public should not have to rely on leaked, and thus possibly incomplete or politically slanted information in evaluating Judge Kavanaugh, so this factor, too, weighs in favor of unsealing the Report. Third, undersigned counsel are unaware at this time of anyone who would object to the unsealing of the Special Master's Report. Similarly, fourth, if no one objects to the unsealing, there are no privacy interests that may be asserted. As Judge Kavanaugh is a candidate for one of the highest-ranking positions as a public servant in our democracy, he can have little privacy interest in maintaining the secrecy of a nearly 20-year-old report concerning his professional conduct. Fifth, there is no ongoing litigation in which the unsealing of this Report would cause prejudice. Finally, the Special Master's Report was commissioned by Chief Judge Johnson for purposes of determining whether to hold the OIC members in contempt for leaking confidential information regarding its investigation. Thus, the Report was integral to the Court's decision, and there is "an obvious public interest" in how that decision came about. *Nat'l Children's Ctr., Inc.*, 98 F.3d at 1410 (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991)).

Because all six *Hubbard* factors weigh in favor of unsealing the Special Master's Report, the presumption in favor of public access to judicial records holds in this case, and the Court should disclose the Report.

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 9

### C. First Amendment Right of Access to Judicial Proceedings

There is also a First Amendment right of access to the courts that argues in favor of releasing the Special Master's Report. Closed proceedings should be rare, and "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 510 (1984). Courts in this Circuit consider two factors in deciding whether there should be public access to judicial proceedings: "(i) 'the place and process have historically been open to the press and general public'; and (ii) 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re Special Proceedings*, 842 F. Supp. 2d 232, 238 (D.D.C. 2012) (quoting *Press–Enterprise Co. v. Sup. Ct. of Cal.*, 478 U.S. 1, 8 (1986)). Again, both of these factors support unsealing the Report.

First, criminal proceedings have historically been open to the press and general public. *See generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-69 (1980). While some special proceedings, such as grand juries, rely on secrecy, *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979), as discussed above, such secrecy is no longer necessary in this case due to the passage of time and the public's knowledge of information leaked from the grand jury proceedings at issue. *See In re Special Proceedings*, 842 F. Supp. 2d at 241 (finding that public should have access to report investigating prosecutorial misconduct when public had access to the prosecution at issue). Moreover, "[t]he First Amendment right of access 'serves an important function of monitoring prosecutorial or judicial misconduct.'" *Id.* at 242 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991). That right is heightened here, where possible findings of prosecutorial misconduct are directly relevant to a judicial candidate's fitness for higher office. The public thus has a right to access a report that informed a court's decision as to whether criminal contempt charges against OIC members were warranted.

Second, access to the Special Master's Report will play a positive role in the public's understanding of why criminal contempt proceedings were not instituted against the OIC, and how that decision reflects on Judge Kavanaugh's nomination to the Supreme Court. *See In re Special Proceedings*, 842 F. Supp. 2d at 243–44 ("access to the Report will also play a positive role in the public's understanding of the Court's decision with respect to criminal contempt proceedings in this case"). It is also "not insignificant" that the Special Master's investigation and report were completed at public expense. *See id.* at 244. "It would be a disservice to the public to require the public to bear these costs, only to deny it the right to access the previously undisclosed facts relevant" to the OIC's actions and the Special Master's conclusions. *Id.* At a time when the public will also bear the cost of hearings and congressional investigation regarding Judge Kavanaugh's nomination, they deserve access to all information germane to those proceedings.

BROWN GOLDSTEIN & LEVY, LLP

The Hon. Chief Judge Howell
August 14, 2018
Page 10

---

Again, the presumptive right of access under the First Amendment is overcome only by a compelling interest that closure is necessary and narrow tailoring to serve that interest. *Press-Enter. Co. v. Superior Ct. of Cal., Riverside Cty.*, 464 U.S. at 510. Here, there is no compelling interest that would require the continued sealing of a report completed nearly two decades ago, focused on information that had already been leaked to the public. However, if, after reviewing the Special Master's Report, the Court finds it necessary to maintain some aspects of the Report under seal, the Court could narrowly tailor its order in a fashion that would protect the interest at issue while giving the public access to the information necessary to fully evaluate Judge Kavanaugh's qualifications to be a Supreme Court Justice.

IV.   **Conclusion**

For the foregoing reasons, American Oversight requests that the Special Master's Report be unsealed as expeditiously as possible. We appreciate your consideration of this emergency request and stand ready to provide any additional information that may be of assistance to the Court.

Sincerely,

Andrew D. Freeman
Kobie A. Flowers
Jean M. Zachariasiewicz
Neel K. Lakchandani[6]

ADF/ld
Encs.
cc: Elizabeth J. Shapiro (by email, w/encs.)

---

[6] Mr. Flowers is admitted to practice in the District of Columbia and to the bar of this Court (Bar No. 991403). Upon the creation of a miscellaneous case, Mr. Flowers will sponsor the other listed attorneys to appear *pro hac vice*.