# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY PROCEEDINGS

Misc. No. 98-55 (NHJ)
(consolidated with Misc. No. 98-177 and Misc. No. 98-228)

~~UNDER SEAL~~

FILED
JUN 19 1998
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

### ORDER TO SHOW CAUSE

Presently before the Court are three motions requesting that this Court order the Office of the Independent Counsel ("OIC") to show cause why it, or individuals therein, should not be held in contempt for violations of Federal Rule of Criminal Procedure 6(e)(2).[1] The first motion for order to show cause, Misc. No. 98-55, was filed on behalf of President Clinton by his personal counsel Mr. Kendall on February 9, 1998, and on March 3, 1998, the Court granted Ms. Lewinsky's motion to intervene in this action. The second motion for order to show cause, Misc. No. 98-177, was filed on May 6, 1998, on behalf of President Clinton by his personal attorneys Mr. Kendall and Mr. Bennett, the White House, Mr. Lindsey, and Mr. Blumenthal. These parties and Ms. Lewinsky are collectively "movants." On June 16, 1998, the parties who filed Misc. No. 98-177 filed a third motion for order to show cause, Misc. No. 98-228. The Court will consolidate these three motions into a single action and address them together at a show cause hearing. See Fed. R. Civ. P. 42(a).

**I.    Standards for Establishing a Prima Facie Violation of Rule 6(e)(2)**

The United States Court of Appeals for the District of Columbia Circuit has held that a

---

[1] Rule 6(e)(2) prohibits prosecutors, grand jurors, and certain individuals other than witnesses from disclosing "matters occurring before the grand jury." Fed. R. Crim. P. 6(e)(2).



district court "must conduct a 'show cause' hearing" if a motion for order to show cause establishes a prima facie violation of Rule 6(e)(2). See Barry v. United States, 865 F.2d 1317, 1321 (D.C. Cir. 1989). To establish a prima facie case, movants must show that "media reports disclosed information about 'matters occurring before the grand jury' and indicated that the sources of the information included attorneys and agents of the Government." Id. (citations omitted). Once a prima facie case is established, the Government must "come forward with evidence to negate the prima facie case" at a show cause hearing to avoid being held in contempt. Id. The show cause hearing helps the court determine whether the Government was responsible for the alleged leaks of Rule 6(e) material. If the Court finds the Government violated Rule 6(e)(2), it may order appropriate relief such as contempt sanctions and equitable relief. See id.

### A. "Matters Occurring Before the Grand Jury"

In order to establish a prima facie case, movants must first demonstrate that the media reports disclosed "matters occurring before the grand jury." Id. The D.C. Circuit recently reaffirmed that "matters occurring before the grand jury" include "not only what has occurred and what is occurring, but also *what is likely to occur*." In re Motions of Dow Jones & Co., Nos. 98-3033 and 98-3034, 1998 WL 216042, *3 (D.C. Cir. May 5, 1998) (emphasis added). Such past, current, or future matters before the grand jury include "the identities of witnesses or jurors, the substance of testimony," "actual transcripts," "the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Id. (citations omitted). In addition to a witness's identity, "the fact that he was subpoenaed to testify, the fact that he invoked [a] privilege in response to questions, [and] the nature of the questions asked" of him are also secret matters. Id. at *4. The D.C. Circuit has also held that "naming or identifying grand jury

2

witnesses; quoting or summarizing grand jury testimony; evaluating testimony; discussing the scope, focus or direction of the grand jury investigations; and identifying documents considered by the grand jury and conclusions reached as a result of the grand jury investigations" are also matters protected by Rule 6(e)(2). Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 869 (D.C. Cir. 1981).

Furthermore, testimonial or documentary information given to OIC investigators or FBI agents working for the OIC by witnesses who have been subpoenaed to appear before the grand jury, whether such information is given before or after their testimony, is protected by Rule 6(e)(2). See Dow Jones, 1998 WL 216042, at *3; In re: The Special February 1975 Grand Jury (Baggot), 662 F.2d 1232, 1238 (7th Cir. 1981), aff'd on other grounds, 463 U.S. 476 (1983). Although in its previous submissions to the Court the OIC has denied that Rule 6(e)(2) applies to such information,[2] the Independent Counsel himself recently conceded this application, noting that "[w]hat we [the OIC] must avoid, and what we do avoid, is discussion of information sought from or provided by witnesses — whether in the form of *investigative interviews*, grand jury appearances, or *documents* provided to this Office." Letter from Mr. Starr to Editor of Brill's Content of June 16, 1998, at 2 (emphasis added). Rule 6(e)(2) also protects investigative reports, including FBI reports, "where they are closely related to the grand jury's investigation itself and where disclosure would reveal the identities of targets and other witnesses." Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1097 (7th Cir. 1992).[3]

---

[2] See, e.g., Opp'n to First Show Cause Motion at 14-15, 36.

[3] The OIC disputes that Rule 6(e)(2) applies to FBI materials, citing three cases, but the Court finds these cases unpersuasive and distinguishable. See Davies v. Comm'r of Internal

B.  **Attribution of Source**

In addition to establishing that media reports disclosed "matters occurring before the grand jury," movants must also show that such reports "indicated that the source of the information included attorneys and agents of the Government." Barry, 865 F.2d at 1321. When deciding whether movants have met their burden, the Court must treat all statements in the news reports as true with respect to what was disclosed and by whom. See Lance, 610 F.2d at 219. Thus, if a news report explicitly identifies the source of information protected by Rule 6(e)(2), the Court must accept this attribution as correct for purposes of the prima facie case. While an article expressly identifying a government official as the source of the Rule 6(e) information clearly supports a prima facie case, "[i]t is not necessary for [an] article to expressly implicate the Justice Department [or other governmental entity] as the source of the disclosures if the nature of the information disclosed furnishes the connection." Barry, 865 F.2d at 1325 (citations omitted). For instance, "[t]he precise attribution of a source in one . . . may give definition of a vague source reference in others because of their context in time or content." Id. at 1326 (citations omitted). Additionally, "attorneys and agents of the Government" need not be the only source of the disclosure of Rule 6(e) material, but need only be "included" among the sources. Id. at 1321.

With respect to the media reports identified in the first motion for order to show cause, the OIC has submitted affidavits from its employees in an effort to rebut any prima facie

---

Revenue, 68 F.3d 1129, 1130 (9th Cir. 1995); In re Grand Jury Matter, 682 F.2d 61 (3d Cir. 1982); In re Grand Jury, 510 F. Supp. 112, 115 (D.D.C. 1981). While it is true that disclosure of information obtained from a prior FBI or other governmental investigation may not violate Rule 6(e), see In re Grand Jury Investigation, Lance, v. Dep't of Justice, 610 F.2d 202, 217 (5th Cir. 1980), here FBI agents, like OIC investigators, are directly involved in this ongoing grand jury investigation and thus are bound by Rule 6(e)(2).

4

violations. The Court finds that the affidavits fail to rebut the prima facie violations of Rule 6(e)(2) established by the first show cause motion. Affidavits denying allegations in a news report that establishes a prima facie case can, but do not necessarily, rebut the prima facie case.

> The inability to show a definite source for some of the information contained in the articles *might* cause a prima facie case to fail if a *responsive* affidavit denying the allegation is made. At the same time, *even with such a response,* the detail as well as the seriousness of the disclosure may militate in favor of a further investigation of its source in the form of an evidentiary hearing.

Lance, 610 F.2d at 219 (emphasis added). The Court finds that the serious and repetitive nature of disclosures to the media of Rule 6(e) material strongly militates in favor of conducting a show cause hearing.

The affidavits from the OIC do not deny that OIC employees were the source of articles in which the OIC was explicitly identified as such.[4] Moreover, the affidavits merely deny disclosing "any of the information quoted in Mr. Kendall's motion that is subject to Rule 6(e)." However, the OIC's submissions to the Court regarding the show cause motions make plain that the OIC defines material protected by Rule 6(e) too narrowly.[5] Therefore, the affidavits disavow disclosing only material that the OIC deems to be "subject to Rule 6(e)," not what this Court holds to be protected by Rule 6(e).

---

[4] Instead, the OIC claims that the information attributed to OIC sources in the first show cause motion is not covered by Rule 6(e). See, e.g., Opp'n to First Show Cause Motion, at 35-41.

[5] In its Opposition to the first show cause motion, the OIC insisted that Rule 6(e) does not apply to information provided by a witness *before* he or she has testified. See, e.g., Opp'n to First Show Cause Motion, at 36 ("The first [part of the article] concerns a remark purportedly made by Ms. Lewinsky, and Movant cites no evidence that she has testified before the grand jury."). The OIC also incorrectly maintained that Rule 6(e) does not apply to FBI materials developed for a grand jury investigation. See id. at 14 and see supra at 3 n. 2.

5

Movants in the first show cause motion, counsel for the President and Ms. Lewinsky, have requested access to the ex parte affidavits filed by the OIC. The OIC filed 98 affidavits with this Court. Because 96 of the affidavits use exactly the same language and only two of the 98 affidavits use different language, the Court will grant movants access to three affidavits: one representing 96 of the affidavits and the two others that used different language. In response to the concerns of the OIC, the Court has redacted from the affidavits the names and job titles of any OIC employees involved in this grand jury investigation. See United States v. Eisenberg, 711 F.2d 959, 964 (11th Cir. 1983).

## II.   Application of Standards to Motions for Order to Show Cause

Based upon the three motions for order to show cause, the OIC's responses in opposition to such motions, and the oral argument of counsel at the sealed hearing held on March 12, 1998, the Court finds that movants have established prima facie violations of Rule 6(e)(2). Although the Court finds that several articles establish prima facie violations, the Court notes that a prima facie case may be established by only one article. See Barry, 865 F.2d at 1321, 1325-26. Examples from the first show cause motion that establish prima facie violations of Rule 6(e)(2) include Tabs 1, 2, and 5. Tab 1 is an NBC Nightly News report aired on February 4, 1998, that directly identifies "sources in Starr's office" and discloses information regarding a subpoenaed witness's potential testimony before the grand jury, evaluations of such potential testimony, and the strategy and direction of the OIC's investigation. See Dow Jones, 1998 WL 216042, at *3; Fund for Constitutional Gov't, 656 F.2d at 869. Tab 2, a New York Daily News article published on January 23, 1998, and Tab 5, a New York Times article published on February 2, 1998, also identify OIC prosecutors as the sources of the reports and also improperly disclose what a

6

subpoenaed witness has told the OIC during investigative interviews. Id.

With respect to the second show cause motion, the Court finds that CBS News White House Correspondent Scott Pelley's report that "investigators have spent months checking out Tripp's story and now claim she is, quote 'completely reliable'" establishes a prima facie violation of Rule 6(e)(2).[6] Tab L, May 8, 1998, Transcript. Although the report does not explicitly identify the OIC as the source, it does identify "investigators." The attribution to "investigators" strongly implies that the source was investigators from the OIC, particularly given that the "nature of the information disclosed furnishes the connection" to the OIC. Barry, 865 F.2d at 1325. OIC investigators are the most likely "investigators" to "have spent months checking out Tripp's story" and have the greatest interest in suggesting to the public that Linda Tripp is a reliable source of information. Given that Ms. Tripp is virtually certain to testify before the grand jury, discussing the nature and credibility of her potential testimony violates Rule 6(e)(2). See Dow Jones, 1998 WL 216042, at *3; Fund for Constitutional Gov't, 656 F.2d at 869 (noting that evaluations of testimony are covered by Rule 6(e)(2)).

The Court also finds that the Fox News report aired on May 6, 1998, regarding Mr. Starr's comment to the press about the Court's Opinion on executive privilege establishes a prima facie violation of Rule 6(e)(2) and a violation of the Court's order that the parties receiving the Opinion not discuss it with the press. Within a day of the Court's releasing the Opinion on May 4, 1998, the press began reporting that the Court had issued a ruling with regard to President Clinton's executive privilege claim and that the Court had denied the claim. See, e.g., The day

---

[6] The Court finds that the Fox News Broadcast aired on May 5, 1998, does not establish a prima facie violation and therefore will not entertain further argument regarding this report.

7

after the leaks, Mr. Starr told reporters in front of his home that he believed the Opinion was a "a magnificent ruling." This comment not only confirmed for the press that the Court had indeed made a decision but also revealed that the substance of that decision was favorable to the OIC. The fact that information about the Opinion had already been leaked at the time of Mr. Starr's comment in no way authorized him to make statements confirming or denying such leaks. See Dow Jones, 1998 WL 216042, at *8 ("Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs") (citations omitted); Barry v. United States, 740 F. Supp. 888, 891 (D.D.C. 1990) ("The Government is obligated to stand silent regardless of what is reported, accurate or not, by the press."). Confirming the existence and substance of a sealed court ruling presents a prima facie violation of Rule 6(e)(2) and a violation of a court order not to discuss the ruling.

With respect to the third motion, the Court finds that it provides further support for the prima facie violations of Rule 6(e)(2) established by the first and second motions. The Independent Counsel's admission to journalist Steven Brill that he and Deputy Independent Counsel Jackie Bennett speak to reporters on condition of anonymity and his statement to Mr. Brill that Rule 6(e) does not apply to "what witnesses tell FBI agents or us [the OIC] *before* they testify before the grand jury" bolster the Court's findings of prima facie violations of Rule 6(e)(2) by the OIC. See Steven Brill, "Pressgate," Brill's Content, Aug. 1998, at 132.[7] Mr. Brill's assertions that he has "personally seen internal memos from inside three news organizations that cite Starr's office as a source" and that "six different people who work at mainstream news

---

[7] Although the Independent Counsel has responded to Mr. Brill's article, he has not disputed that he made these statements in his interview with Mr. Brill.

8

organizations have told [him] about specific leaks" also support the Court's findings of prima facie violations. Id. at 131, 150.

### III.     Procedures for the Show Cause Hearing

The three motions establish prima facie violations of Rule 6(e)(2) and thereby require the Court to conduct a show cause hearing. Barry, 865 F.2d at 1321. Given that the motions identify a significant number of news reports and in order to facilitate an efficient show cause hearing, the Court asks movants to identify a limited number of such reports that they intend to focus on at the show cause hearing. Movants shall identify such news reports for the Court by June 24, 1998. If movants would like this Court to consider at the show cause hearing additional news reports that have not been identified in the three motions,[8] movants shall have until June 24, 1998, to file another show cause motion. The OIC shall have until June 30, 1998, to submit any additional responses to the allegations raised by the news reports identified by movants for the show cause hearing and by any additional show cause motions.

The Court will not hear deposition testimony at the hearing but will permit live testimony. Movants and the OIC shall submit witness lists to the Court by July 1, 1998. As the parties have agreed, the show cause hearing shall be held on July 6, 1998, at 10:00 a.m. and shall be sealed. The Court will release a redacted transcript of the hearing, and to that end, the parties shall submit their proposed redactions seven days after they receive the official transcript.

Upon consideration of the entire record in this matter, it is this ___19th___ day of June 1998,

---

[8] For example, at the scheduling conference on June 15, 1998, counsel for Mr. Lindsey expressed interest in having a Los Angeles Times article dated June 12, 1998, considered at the show cause hearing.

9

ORDERED that the three motions for order to show cause in Misc. Nos. 98-55, 98-177, and 98-228 be, and hereby are, granted; it is further

ORDERED that the three redacted affidavits be, and hereby are, released to movants in the first show cause motion, counsel for the President and Ms. Lewinsky; it is further

ORDERED that movants shall identify for the Court by June 24, 1998, a limited number of news reports that they intend to focus on at the show cause hearing; it is further

ORDERED that any additional show cause motions to be considered at the July 6 hearing must be filed by June 24, 1998; it is further

ORDERED that the OIC shall respond to movants' June 24 submissions by June 30, 1998; it is further

ORDERED that movants and the OIC shall submit witness lists to the Court by July 1, 1998; it is further

ORDERED that representatives of the OIC appear to show cause why the Office or individuals therein should not be held in contempt for violation of Federal Rule of Criminal Procedure 6(e)(2) at 10:00 a.m. in Courtroom 4 on July 6, 1998; it is further

ORDERED that the hearing shall include counsel for President Clinton, Ms. Lewinsky, the White House, Mr. Lindsey, Mr. Blumenthal, and the OIC. If there are objections to the participation of any of these parties, such objections shall be filed by June 24, 1998; it is further

ORDERED that the parties shall submit proposed redactions to the transcript of the show cause hearing within seven days of receiving the official transcript; and it is further

ORDERED that the parties shall submit proposed redactions of all their pleadings regarding the motions for order to show cause by July 20, 1998.

*Norma Holloway Johnson*
NORMA HOLLOWAY JOHNSON
CHIEF JUDGE