**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

IN RE EMERGENCY REQUEST TO )
UNSEAL SPECIAL MASTER'S REPORT )
CONCERNING ALLEGATIONS OF )     Misc. No. 18-112 (RCL)
IMPROPER DISCLOSURES OF GRAND )
JURY MATERIALS )
_____)

**THE DEPARTMENT OF JUSTICE'S RESPONSE TO EMERGENCY REQUEST**
**TO UNSEAL THE SPECIAL MASTER'S REPORT**

**INTRODUCTION**

On August 15, 2018, petitioner American Oversight submitted to the Court a

letter seeking the expedited unsealing of a 1999 special master report ("Report").  The

Report, authored by Judge John W. Kern, III, examined allegations that individuals

within the Office of Independent Counsel ("OIC") were responsible for the disclosure of

grand jury protected information to the media, in violation of Criminal Rule of Federal

Procedure 6(e).  Once completed, Judge Kern submitted the report to Chief Judge Norma

Holloway Johnson, who, on March 23, 2001, discharged the order to show cause that had

precipitated the appointment of the special master, and dismissed the underlying cases.

_See In re Grand Jury Proceedings,_ Civil Action Nos. 98-55, 98-177, 99-228

(consolidated) (Order dated March 23, 2001).   A second order to show cause, predicated

on an alleged leak of the sealed Report, _see_ Misc. No. 98-55, ecf # 102, was dismissed in

the same order.  _Id_., ecf # 122.

Chief Judge Howell docketed the petitioner's letter as a miscellaneous matter, and

noted that, "although the report concerned potential violations of Rule 6(e), the Report

itself does not appear to implicate Rule 6(e) material."  _See_ Order, Aug. 15, 2018, ecf # 2.

Accordingly, the Chief Judge transferred the matter to the Calendar and Case Management Committee for random reassignment.

Petitioner's letter alleges, and the docket confirms, that a copy of the Report was provided to outside counsel representing the OIC. *See* Order, Feb. 2, 1999, Misc. No. 98-55, ecf # 102, attached to Petitioner's Letter at Exh. 3. Accordingly, the National Archives and Records Administration ("National Archives" or "NARA"), using its public finding aides, located a copy of the Report among the records transferred to NARA from the OIC.[1] Undersigned counsel has now reviewed the Report, and contacted individuals who may have a privacy interest in the Report's disclosure. With the exception of redactions to protect the privacy of one individual discussed in the report – an individual who is not Judge Brett Kavanaugh – and subject to the ordinary review process of the National Archives[2], the government does not object to the Report's unsealing pursuant to the traditional test for unsealing applied by this Circuit.

## DISCUSSION

### I.      The Report No Longer Contains Grand Jury Protected Information

Federal Rule of Criminal Procedure 6(e) "codifies the traditional rule of grand jury secrecy." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983). As the Supreme Court has explained,

> Grand jury secrecy * * * is as important for the protection of the innocent as for the pursuit of the guilty. Both Congress and this Court have consistently stood ready

---

[1] As of the date of this filing, the National Archives has not been able to locate the exhibits that the Report references. The Report without the exhibits is being provided to this Court *ex parte and in camera.*

[2] The National Archives is conducting its review simultaneously with these proceedings so that upon the Court's order lifting the seal, NARA can expeditiously release the document.

to defend it against unwarranted intrusion.  In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized.

*Sells Engineering*, 463 U.S. at 424-425 (emphasis added).

Rule 6(e) prohibits all non-witness participants in a grand jury proceeding from disclosing any "matter occurring before the grand jury," "[u]nless these rules provide otherwise."  Rule 6(e)(2)(B).  The Rule then enumerates the specific circumstances in which disclosure of grand jury materials is permissible.[3]

At the time Judge Johnson issued the order to show cause and appointed Special Master Kern, at least a portion of the information at issue was unquestionably subject to Criminal Rule 6(e).  Indeed, the underpinning of Judge Johnson's order granting the motion to show cause was the court's determination that information appearing in twenty-four different news reports, if disclosed by a member of the prosecution subject to Criminal Rule 6(e), would constitute prima facie violations of Rule 6(e).  *See* Misc. No. 98-55, Order (June 19, 1998), ecf #30.  On July 7, 1998, however, a panel of the D.C. Circuit authorized the Independent Counsel to transmit to the House of Representative all materials he deemed necessary to satisfy his statutory mandate, including grand jury information.  *See* Order, July 7, 1998, reproduced in the *Appendices to the Referral to the United States House of Representatives Pursuant to 28, United States Code, Section 595(c) Submitted by the Office of the Independent Counsel, September 9, 1998*, Part I, Tab B, p. 10 ("OIC Referral").  The House of Representatives released the OIC Referral

---

[3] Despite contrary rulings from this court, the government maintains that district courts lack inherent authority to authorize disclosure of grand jury information for reasons other than those articulated in Criminal Rule 6(e), including for reasons of historical or public interest.  The issue is currently before the D.C. Circuit.  *See McKeever v. Sessions*, No. 17-5149 (D.C. Cir.) (oral argument scheduled for Sept. 21, 2018).

to the public on September 10, 1998.  The information in the twenty-four articles that

formed the basis for the show cause order appeared in detail in the OIC referral, and once

widely released into the public domain, lost its character as grand jury information.  *See,*

*e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007)

(denying request, based on the public interest, to release grand jury testimony not

presented at trial, but finding that "when once-secret grand jury material becomes

'sufficiently widely known' it may 'los[e] its character as Rule 6(e) material.'") (internal

citations omitted).  Accordingly, there is no occasion for the court to consider whether

information from the sealed Report should be disclosed despite it being otherwise

restricted from disclosure under Criminal Rule 6(e).

## II.  There is No First Amendment Right of Access under *Press Enterprise*

Petitioner suggests that the Report should be unsealed based on a "First

Amendment right of access to the courts …." *See, e.g.*, *Press-Enter. Co. v. Superior Court*

*of California, Riverside Cty.*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"), Petitioner's

Letter, Aug. 14, 2018.  In *Press-Enterprise II*, the Supreme Court considered whether a

First Amendment right of access attaches to a state preliminary hearing arising out of a

capital murder prosecution.  478 U.S. at 3.  The Court applied the "experience and logic"

test, asking first, "whether the place and process have historically been open to the press

and general public," and second, "whether public access plays a significant positive role

in the functioning of the particular process in question."  *Id.* at 8.  A qualified First

Amendment right of public access exists only "[i]f the particular proceeding in question

passes these tests of experience and logic."  *Id.* at 9.

As to the "experience" prong, the Court cited a "near uniform practice of state and federal courts" evincing a "tradition of accessibility to preliminary hearings of the type conducted in California." *Id.* at 10-11. And the Court found that a preliminary hearing in California was "sufficiently like a trial" that public access was "essential to the proper functioning of the criminal justice system." *Id.* at 12. This observation, coupled with its prior determination that "openness in criminal trials . . . 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system,'" led the Court to conclude that the "logic" prong was also met. *Id.* at 9 (quoting *Press-Enterprise I*, 464 U.S. at 501).

But the *Press Enterprise II* analysis does not apply here. Petitioner in this matter seeks access to a government document, not to a proceeding, and the First Amendment does not mandate any "special right of access to government-controlled sources of information." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978). Accordingly, there is no occasion to apply the *Press-Enterprise II* framework.

Even if one applied *Press-Enterprise II*, however, petitioner could not satisfy either the experience or logic prong of the analysis. Petitioner seeks access to the sealed report of a special master who was tasked to investigate potential wrongdoing. The confidentiality of investigative records in misconduct inquiries is a longstanding practice, with no history of openness or public access. Such confidentiality is required both to protect those being investigated from being unfairly impugned, and to protect the investigation itself so it can proceed without hindrance or interference. Indeed, the proceeding in which this investigation arose was itself a grand jury proceeding, an indisputably non-public proceeding. *See Payne Enterprise II*, 438 U.S. at 9 (contrasting a

preliminary hearing to the "classic example" of secret grand jury proceedings); *In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) (holding that press organizations did not have First Amendment right of access to district court proceedings ancillary to grand jury investigation of whether violations of federal law occurred in relation to witnesses or others associated with civil case against the President).

Accordingly, petitioner has no First Amendment right to the special master report, and it should not be unsealed based on an application of *Payne Enterprise II*.

### III.   The Court Should Apply the Traditional *Hubbard* Factors in Evaluating Whether to Unseal the Report.

In *United States v. Hubbard,* 650 F.2d 293, 314 (D.C. Cir. 1980), the Court of Appeals "identified six factors that might act to overcome [the] presumption" of public access to court records.  Those factors are (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.  *See U.S. ex rel. Schweizer v. Oce, N.V.,* 577 F. Supp. 2d 169, 171–72 (D.D.C. 2008), citing *Hubbard.*[4]

---

[4] The Court need not determine that the Report is a "judicial record" in order to apply the *Hubbard* factors.  The copy of the Report in the National Archives' possession is an Executive Branch record, as it was transferred to the National Archives as part of the records of the Office of Independent Counsel, an entity that existed within the Executive Branch.  *See* 28 U.S.C. § 594(k).  The Report is sealed, however, due to an order of the Chief Judge of this Court.  Accordingly, this Court is empowered to evaluate whether or not to maintain the seal.  *C.f., Morgan v. Dep't of Justice*, 923 F.2d 195, 198 (D.C. Cir. 1991) (holding that agencies seeking to withhold sealed records in a FOIA action "have the burden of demonstrating that the court issued the seal with the intent to prohibit the [agency] from disclosing the [records] as long as the seal remains in effect.").

The first factor weighs in favor of unsealing, as the National Archives is already processing thousands of pages of records from the Office of Independent Counsel in connection with the nomination of Judge Kavanaugh to be an Associate Justice of the Supreme Court.

The second factor weighs only modestly in favor of the document remaining sealed. There has been no prior public access to the Report, and as the OIC explained to Judge Johnson, a news report purporting to reveal the contents of the Report was "inaccurate" and likely based on "speculation." *See* Misc. No. 98-55, ecf # 104 (Response of the United States), March 11, 1999. On the other hand, while the Report has never been disclosed, the dockets of the proceedings that led to the Report were recently unsealed, and at least one pleading within that docket describes the Report in general terms. *See id.* at pp. 8-9 (describing the first twenty-two pages as "procedural and factual background," and the next forty pages as addressing "the twenty-four news reports at issue.").

The third through fifth factors weigh in favor of partial unsealing. Undersigned counsel contacted those individuals who provided testimony to the Special Master, and the majority did not object to unsealing.[5] One individual did object, however, and those objections should weigh dispositively in favor of that individual's identity remaining sealed. Individuals named in investigative reports detailing alleged wrongdoing are entitled to a high degree of privacy, particularly when, as here, no violations of law were found and the order to show cause was discharged with no further action. *See, e.g.,*

---

[5] One individual who provided testimony is deceased.

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (holding that the former First Lady had a significant privacy interest in not revisiting past criminal investigations that never resulted in an indictment). *See also Fund for Constitutional Gov't*, 656 F.2d 856, 866 (D.C. Cir. 1981) ("[W]here individuals have been investigated but not charged with a crime," disclosure of the investigative material "represents a severe intrusion on the privacy interests of the individual [ ] in question."). Moreover, the person at issue is not Judge Kavanaugh; thus the public interest animating this emergency petition is not present, and there are no "exceptional interests [that] militate in favor of disclosure." *Fund for Constitutional Gov't*, 656 F.2d at 866.

The last *Hubbard* factor focuses on the purposes for which the document was introduced into the judicial proceedings. Due to the nature of the document, which investigates allegations of wrongdoing but ultimately finds no violations of anything within the Special Master's investigative mandate, privacy concerns would ordinarily dictate that the document remain sealed. *See Judicial Watch, supra.* Here, however, the majority of individuals named in the Report do not object to unsealing, the dockets pertaining to this matter have already been unsealed, and the public interest is high. Accordingly, the balance of the *Hubbard* factors favors unsealing. With the caveats expressed herein regarding one individual, and subject to NARA's ordinary privacy review, the government does not oppose the unsealing of the requested document.

Dated:  August 22, 2018                    Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           */s/ Elizabeth J. Shapiro*
                                           ELIZABETH J. SHAPIRO
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           Tel: (202) 514-5302
                                           Fax: (202) 616-8470
                                           elizabeth.shapiro@usdoj.gov
                                           Attorneys for the United States